

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00361-CV

IN RE GINA P. HONERMANN-GARINGER                                    RELATOR

-----------

ORIGINAL PROCEEDING

-----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Relator Gina P. Honermann-Garinger (Gina) has filed a petition for writ of habeas corpus seeking relief from a September 30, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc." For the reasons set forth below, we will construe Gina's petition as a petition for writ of

---

[1]*See* Tex. R. App. P. 47.4.

mandamus, grant relief, and order the trial court to set aside its September 30, 2010 order, including the provision requiring Gina to pay the attorney's fees of Real Party in Interest Ronald Van Baker, Jr. (Ronald).

## II. FACTUAL BACKGROUND: RONALD'S MOTION FOR ENFORCEMENT AND THE TRIAL COURT'S ORDER OF ENFORCEMENT BY CONTEMPT

Although the factual background leading up to the trial court's September 30 order is extensive and somewhat convoluted, the facts pertinent to this proceeding are straightforward and undisputed. Ronald, who is Gina's ex-husband and father of their child P.W.W.B, filed a first amended motion for enforcement alleging that Gina had violated a November 15, 2001 "Order Modifying Prior Order" that imposed on both Gina and Ronald "the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child." Ronald's first amended motion for enforcement also alleged that Gina had violated an April 30, 2009 order that the trial court had pronounced orally in open court requiring the following of both parents:

> Any time either one of you take this person—this kid to see a doctor, within 72 hours—you have the independent right and I'm not changing that. But within 72 hours you are to send an e-mail to the other parent that says you took the kid to the doctor and you are to describe what the doctor said. . . . So in writing, 72 hours, by email.

Ronald alleged that Gina had violated both the November 15, 2001 order and the April 30, 2009 oral pronouncement by taking P.W.W.B. for therapy and

2

counseling every two weeks from May 2008 through April 2009 without notifying Ronald.

On August 27, 2010, the trial court heard Ronald's motion for enforcement. Also on August 27, 2010 the trial court signed an "Order on Motion for Enforcement/Clarification of Prior Order" setting forth, with some modifications, its prior April 30, 2009 oral pronouncement.

On September 30, 2010, the trial court signed the "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc" that Gina now challenges.[2] That order provides:

> The Court finds that Respondent [Gina] is guilty of separate violations of the Order Modifying Prior Order, signed November 15, 2001 in Cause No. 2000-60475-393, styled "In the Interest of [P.W.W.B.], a Child," in 393rd of Denton County that appears in the minutes of this Court and states in relevant part on page 3, as follows:
>
> > "IT IS ORDERED that, at all times, [Ronald] and [Gina], as parent joint managing conservators, shall each have the following duties:
> >
> > 1.  the duty to inform the other the other [sic] parent in a timely manner of significant information concerning the health, education, and welfare of the child."

---

[2]The trial court had previously signed a September 8, 2010 "Order of Enforcement by Contempt and Suspension of Commitment" and a September 27, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc."

The Court also finds that Respondent [Gina] is guilty of separate violations of the order made by this Court on April 30, 2009. This Court made the following order in open Court in the presence of both the Movant [Ronald] and Respondent [Gina] and their counsel:

> "Any time either one of you (referring to Movant and Respondent) take this person—this kid to see a doctor, within 72 hours—you have the independent right and I'm not changing that. But within 72 hours you are to send an e-mail to the other parent that says you took the kid to the doctor and you are to describe what the doctor said. . . . So in writing, 72 hours, by email."

As a result of Gina's alleged violations of the November 15, 2001 order and the April 30, 2009 oral pronouncement, the trial court found Gina in contempt, "assessed" attorney's fees of $5,000 against her, and ordered her punished by confinement "for a period of 180 days for each separate violation." The trial court ordered Gina's commitment suspended "provided that [Gina] timely complies with the following terms and conditions:"

1. IT IS ORDERED that Respondent [Gina] pay $5,000, attorneys' fees and costs, by cash, cashier's check, or money order to Koons, Fuller, Vanden Eykel, and Robertson, P.C., at 2311 Cedar Springs, Suite 300, Dallas, Texas, 75201, by September 24, 2010 at 4:00 p.m.

2. IT IS ORDERED that should Respondent [Gina] be held in contempt for violation of any duty to keep Petitioner informed of all educational, medical, psychological or therapeutic information as set forth in the other orders of this Court before the child's 18th birthday or fail to pay the attorneys' fees and costs as ordered above, the suspension of commitment shall be lifted and Respondent [Gina] shall be committed to the Denton County Jail for the period of confinement ordered above.

4

### III. THE CONTEMPT ORDER IS VOID

The trial court's order holding Gina in contempt is based on her alleged violations of the November 15, 2001 order and of the April 30, 2009 oral pronouncement. As discussed below, the November 15, 2001 order is not specific enough to be enforceable by contempt. And the contemptuous acts that Ronald alleged, and that the trial court found Gina had committed, occurred from May 2008 through April 2009—*prior* to the trial court's April 30, 2009 oral pronouncement; so the contemptuous acts alleged by Ronald and found by the trial court do not violate the trial court's not-yet-existing April 30, 2009 oral pronouncement. Thus, as discussed in more detail below, the September 30, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc" is void and will not support imposition of a fine, attorney's fees, or confinement.

#### A. November 15, 2001 Order Not Enforceable by Contempt

To be enforceable by contempt, a judgment or order must set out the terms for compliance in clear and unambiguous terms. *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990) (orig. proceeding). The order underlying a contempt judgment must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed upon her. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). The judgment

5

or order must also clearly order the party to perform the required acts. *Ex parte Gorena*, 595 S.W.2d 841, 845 (Tex. 1979) (orig. proceeding). The question of whether an order is enforceable by contempt depends on whether the order is definite, certain, and not susceptible to different meanings or constructions. *Ex parte Kraus*, 863 S.W.2d 104, 106 (Tex. App.—Corpus Christi 1993, orig. proceeding). The focus is on the wording of the judgment or order itself. *Ex parte Reese,* 701 S.W.2d 840, 841 (Tex. 1986) (orig. proceeding). If the court's order requires inferences or conclusions about which reasonable persons might differ, it is insufficient to support a judgment of contempt. *Chambers*, 898 S.W.2d at 260.

The November 15, 2001 "Order Modifying Prior Order" that imposed on both Gina and Ronald "the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child" does not order or command Gina or Ronald to perform any act. It does not require either Gina or Ronald to notify the other of a doctor's appointment. It does not impose any time parameter for either Gina or Ronald to provide information to the other—only "a timely manner." It does not set forth what information is to be provided—only "significant information." As a matter of law, the provision of the November 15, 2001 order imposing on Gina "the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child" is not sufficiently specific to be enforced by contempt. *See, e.g., Brister*, 801 S.W.2d at 835 (holding "vague and

6

cryptic" visitation provisions in decree not enforceable by contempt); *Reese*, 701 S.W.2d at 841–42 (holding agreed judgment requiring company to "take back" water system and to "begin to restore it to proper condition" lacked sufficient specificity to be enforceable by contempt); *In re Davis*, 305 S.W.3d 326, 331 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (holding order's provision requiring mother to call child's primary care physician "in the event that a child appears to be ill upon awakening on a regularly scheduled school day" lacked sufficient specificity to be enforceable by contempt); *In re Johnson*, 996 S.W.2d 430, 435–36 (Tex. App.—Beaumont 1999, orig. proceeding) (holding order that required contemnor to produce documents but that did not specify the date on which the documents were to be produced was unenforceable by contempt); *Kraus*, 863 S.W.2d at 107 (holding order requiring alleged contemnor to "conduct all acts necessary to secure possession of the child" and to "assist with the immediate return of the child to the Court" was vague, ambiguous, and not enforceable by contempt).

**B.  Alleged Contemptuous Acts Occurred Prior to April 30, 2009 Oral Pronouncement; Contempt Not Available**

Ronald alleged, and the trial court found, that Gina had violated both the November 15, 2001 order and the April 30, 2009 oral pronouncement by taking P.W.W.B. for therapy and counseling every two weeks from May 2008 through April 2009 without notifying Ronald. But these allegedly contemptuous acts—

7

taking place between May 2008 and April 2009—occurred prior to the trial court's April 30, 2009 oral pronouncement that Gina allegedly violated.

An alleged contemnor cannot be held in constructive contempt of court for actions taken before the court reduces its order to writing. *Ex parte Guetersloh*, 935 S.W.2d 110, 111 (Tex. 1996) (orig. proceeding) (holding alleged contemnor could not be held in contempt for violation occurring between oral order and reduction of oral order to written order); *Chambers*, 898 S.W.2d at 262 (same); *Ex parte Price*, 741 S.W.2d 366, 367–68 (Tex. 1987) (orig. proceeding) (same); *Ex parte Sellers*, 982 S.W.2d 85, 87 (Tex. App.—Houston [1st Dist.] 1998, orig. proceeding) (same).

Because the trial court's April 30, 2009 oral pronouncement had not occurred—that is, it did not exist—when Gina allegedly violated it by taking P.W.W.B. for therapy and counseling every two weeks from May 2008 through April 2009 without notifying Ronald, Gina may not be held in contempt for violating the not-yet-in-existence April 30, 2009 oral pronouncement of the trial court. *See* G*uetersloh*, 935 S.W.2d at 111; *Chambers*, 898 S.W.2d at 262; *Price*, 741 S.W.2d at 367–68; *In re Sellers*, 982 S.W.2d at 87.

### C.   Gina is Entitled to Relief

Ronald argues in his response that Gina is not entitled to habeas relief because she has not yet been confined. In her reply, Gina argues that this court possesses jurisdiction over the trial court's September 30, 2010 order, if not via a petition for writ of habeas corpus, then via a petition for writ of mandamus.

8

Generally, contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding).[3] A contempt judgment may be attacked by a petition for writ of habeas corpus when the contemnor is confined or by a petition for writ of mandamus if the contemnor is not confined. *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding).

Here, Gina was found in contempt and ordered to spend 180 days in jail for each violation; her commitment to jail was ordered suspended so long as she complied with certain conditions—payment of attorney's fees and compliance with her "duty to keep Petitioner informed of all educational, medical, psychological or therapeutic information as set forth in the other orders of this Court before the child's 18th birthday." The contempt order simply orders Gina to pay attorney's fees and to do what she is already required to do—comply with orders of the trial court. Gina is thus not confined pursuant to, or restrained by, the September 30, 2010 contempt order. *See*, *e.g.*, *Ex parte Hughey*, 932 S.W.2d 308, 310–11 (Tex. App.—Tyler 1996, orig. proceeding); *Ex parte Sealy*,

_____

[3]Exceptions exist to this general rule, typically when the contempt order places some other type of restraint on the relator's liberty. *See*, *e.g.*, *Brister*, 801 S.W.2d at 835 (holding relator entitled to habeas relief when she was ordered to submit to house arrest as condition of suspension of commitment); *Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985) (orig. proceeding) (explaining that relator was under "restraint" although out on bond); *In re Ragland*, 973 S.W.2d 769, 771 (Tex. App.—El Paso 2001, orig. proceeding) (holding habeas relief appropriate when relator restrained by requirement that he perform community service every week for a year).

870 S.W.2d 663, 665–66 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding). Because Gina is not confined pursuant to, or restrained by, the September 30, 2010 contempt order, mandamus, not habeas, is the appropriate remedy for the trial court's void September 30, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc."

In the interests of justice and looking to the substance of Gina's petition, rather than its caption, we construe her petition for writ of habeas corpus as a petition for writ of mandamus. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (instructing us to look to the substance of a pleading rather than its caption or format to determine its nature); *see also In re Coppock,* 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding) (noting, in granting habeas corpus, that court of appeals had treated petition for writ of habeas corpus as petition for writ of mandamus); *In re Smith*, 310 S.W.3d 908, 909 (Tex. App.—Eastland 2010, orig. proceeding) (granting mandamus relief based on petition for writ of habeas corpus alternatively seeking mandamus relief); *Motor Veh. Bd. v. El Paso Indep. Auto Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex. 1999) (recognizing policy of construing rules of appellate procedure liberally so that decisions turn on substance rather than procedural technicality); *Ex parte Casillas*, 25 S.W.3d 296, 298 n.1 (Tex. App.—San Antonio 2000, orig. proceeding) (construing "petition for writ of habeas corpus and/or writ of

mandamus" as petition for writ of habeas corpus because outstanding capias for relator's arrest existed).[4]

For the reasons set forth above, the September 30, 2010 contempt order is void. Gina has no adequate remedy at law to obtain relief from this contempt order because a contempt order is not appealable. *See Office of Attorney Gen. of Tex.*, 215 S.W.3d at 916. Because the September 30, 2010 contempt order is void and because Gina has no adequate remedy at law, we will conditionally grant a writ of mandamus directing the trial court to set aside and vacate the September 30, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc." *See Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex. 1995) (granting mandamus relief from void portion of contempt judgment); *Sealy*, 870 S.W.2d at 666 (same).

## IV. CONCLUSION

We conditionally grant a writ of mandamus and order the trial court to immediately set aside its September 30, 2010 "Order of Enforcement by Contempt and Suspension of Commitment Nunc Pro Tunc." The writ will issue only if the trial court fails to comply.

SUE WALKER

---

[4]*See also In re Clark*, No. 10-03-00037-CV, 2004 WL 1632768, at *2–3 (Tex. App.—Waco July 21, 2004, orig. proceeding) (mem. op.) (analyzing cases determining whether habeas corpus or mandamus is the appropriate remedy and construing relator's mandamus petition as petition for writ of habeas corpus).

11

JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED:  November 17, 2010