**Ex parte Ronald David DECKERT, Relator.**

**No. 17024.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 10, 1977.

Patricia R. Lykos, Houston, for relator.

John Lohmann, III, Houston, for respondent.

COLEMAN, Chief Justice.

This is an original proceeding by which Ronald David Deckert seeks a discharge from imprisonment under a commitment order which was entered pursuant to the trial court's finding of contempt for failure to make child support payments. The relator will be discharged.

In his petition for writ of habeas corpus the relator asserts that he was denied due process of law for the reason that the motion alleging contempt of court filed under Rule 308–A, Texas Rules of Civil Procedure, failed to give him adequate notice of the nature of the complaint. He asserts that the order of commitment is void because it recites that he was in violation of an order of the court which had been superseded by a different order prior to the date of the alleged acts of contempt. Finally he asserts that the commitment order is void for the reason that it directs the sheriff to detain him until he pays the sum of $660.00 in delinquent child support payments despite the fact that at the contempt hearing the evidence clearly established that it was not within his power to obtain that sum of money in order to comply with the order.

The Deckerts were divorced on February 21, 1975. The decree awarded $110.00 every two weeks for child support for the couple's two children "until the child with respect to whom payments are made shall attain the age of eighteen". This support order was subsequently modified on January 26, 1976 and on May 11, 1977. The modification order which was pronounced on May 11, 1977 and signed on June 8, 1977 provides for child support payments in the amount of $110.00 every other week beginning May 20, 1977 and continuing thereaft-

er "until the youngest child reaches the age of eighteen years." It also provides that Ronald David Deckert pay and be responsible for one-half of all medical and dental bills incurred by the children. Deckert was also ordered to pay $150.00 attorney fees and the court cost.

■ The motion ·for contempt culminating in the order under attack recited that portion of the May 11 order relating to child support. The orders relating to Deckert's duty to pay medical bills and attorney's fees and costs was not referred to in the motion. The motion then states:

"That subsequent to the date of the Order Modifying Prior Order the respondent herein has failed and refused and still fails and refuses to comply with such Order Modifying Prior Order and has thereby disobeyed the said order of this honorable court."

Nowhere in the motion was Deckert specifically charged with failure to make child support payments. He was specifically charged with a failure to comply with the specified order rather than with the portion thereof dealing with child support. The Supreme Court of Texas has held that in constructive contempt matters due process of law demands that before a court can punish for a contempt not committed in its presence, the accused must have full and complete notification of the subject matter, and the show cause order or other means of notification must state when, how, and by what means the defendant has been guilty of the alleged contempt. *Ex parte Edgerly*, 441 S.W.2d 514 (Tex.1969).

In the motion for contempt the relator was charged only with failing and refusing to comply with the order of May 11, 1977. Since that order contains three separate and distinct commands enforceable through contempt proceedings, relator could not determine definitely the charges against him. This case is therefore ruled by the *Edgerly* case where the relator was served with notice that they were charged with violating a writ of injunction. The affidavits by virtue of which the process in *Edgerly* was issued charged that the relators had violated a temporary restraining order "by picketing the Port Arthur Terminal, . . .." Relator was not accorded due process of law. *Ex parte Edgerly*, supra; *Ex parte Davis*, 450 S.W.2d 97 (Tex.Civ.App.—Houston [14th Dist.] 1970).

■ In the order of commitment the trial court recited that relator was found to be in contempt of court "by reason of his failure and refusal to make the payments of child support heretofore ordered in the amount of $660.00 in defiance of the terms of the decree hereinabove referred to . . .." The decree "hereinabove referred to" was the judgment of the court entered on the 21st day of February 1975. This order had been supplanted by a subsequent order. The notice alleged a violation of the subsequent order. It appears from the other portions of the record that the court made a mistake in its finding that the relator violated the February 21, 1975 order. The mistake has not been corrected and relator was not given notice that he was charged with a violation of that particular order. Relator has demonstrated that the order which he has been found to have violated was not a valid order at the time of the hearing. Judgment of contempt as shown by the writ of commitment is void. *Ex parte Parr*, 505 S.W.2d 242 (Tex.1974); *Ex parte White*, 149 Tex. 155, 229 S.W.2d 1002 (1950); *Ex parte Hardy*, 531 S.W.2d 895 (Tex.Civ.App.—Dallas 1975).

In view of the frequency with which we are confronted with the problem, we consider it proper to discuss the other contention presented.

■ Where it is not within the power of a person to perform the act which will purge him from contempt, the court is without power to imprison him for an indefinite term for a prior committed act. *Ex parte DeWees*, 146 Tex. 564, 210 S.W.2d 145 (1948). Relator has the burden to show that the evidence adduced at the hearing conclusively establishes his inability to perform. *Ex parte Kollenborn*, 154 Tex. 223, 276 S.W.2d 251 (1955).

The relator testified that since the date on which the child support payments were set both he and his wife had lost their jobs. He was earning a gross salary of $150.00 per week at the time of the hearing in this case, and his wife was collecting $63.00 per week unemployment compensation. Prior to the hearing and the loss of his job he had purchased a home, the monthly payments on which was $573.00. He had purchased a car, the payments on which were $175.00 per month. He testified that he had numerous charge account debts which he was unable to pay. He testified that he was delinquent in all of his accounts; that he owed money to two banks and a finance company and was delinquent in his payments to each of those institutions. Both his gas and lights had been cut off for failure to pay bills. He testified that his regular monthly payments amounted to more than $2,000.00, and that his income combined with that of his wife was less than $1,000.00. He testified that he had attempted to borrow from two banks and was unable to do so. He testified to the conclusion that he was unable to borrow the money. There is nothing in the record to suggest that he had any property other than the house and the car. The house was occupied by relator, his wife, and her four children as a homestead. Neither it nor the automobile are property which would be subject to forced sale for debt. There is no testimony concerning the value of the car or the relator's equity therein.

■ We consider that the principle to be applied in a contest of an affidavit alleging inability to pay costs of court should be applied in cases such as this. The general rule to be followed is set forth in *Pinchback v. Hockless*, 139 Tex. 536, 164 S.W.2d 19 (Tex.Comm'n App.1942), in these words:

"Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?"

In that case the court stated that if the applicant owns an automobile or other valuable property, "although exempt from execution," which he could mortgage or otherwise dispose of thereby securing the necessary funds without depriving himself or his family of the necessities of life, he should be required to pay the costs, or give security therefor. The burden is on the relator to show that he is unable to secure the necessary funds.

■ Since this proceeding is a collateral attack on contempt judgment, we consider that relator must show without substantial contradiction in the record that he was unable at the time of the hearing to do the act required by the judgment as a condition for release from custody. Relator's failure to show that he had no substantial equity in the car precludes a holding that he is unable to make the payment which would purge him of the contempt charge.

Since we find that the commitment order is void, it is ordered that relator be discharged from custody.