Ex parte Deborah BRISTER, Relator.

No. C–9567.

Supreme Court of Texas.

Dec. 19, 1990.

James M. Whitten, Sinton, for relator.

Mark H. Giles, Corpus Christi, for respondent.

## OPINION

RAY, Justice.

In this original habeas corpus proceeding, the trial court held relator, the mother and managing conservator of a minor child, in contempt for her failure to deliver possession of the child to the father for a "period of possession" unilaterally designated by the father under the parties' divorce decree. We hold the provisions of the divorce decree relator was found to have violated are not sufficiently clear and unambiguous to be enforced by contempt. We therefore hold the judgment of contempt is unenforceable and order relator discharged.

Deborah Brister and David Eugene Brister were divorced by a decree which appointed Deborah managing conservator and David possessory conservator of their minor child, Ryan. In relevant part the decree provides:

> IT IS ORDERED AND DECREED that [father] shall have possession of the child at all times as the parties may mutually agree, and failing mutual agreement, as follows:
>
> *Weekends.* During periods each month, with the period of possession to begin at 6:00 p.m. on the first and third Fridays of each month and to end at 6:00 p.m. on the Sunday immediately following. (subject to *modification* as set out herein)

(Emphasis added.) The decree allows David to modify this visitation schedule to accommodate his working changing shifts, as follows:

> IT IS ORDERED that the standard visitation schedule set out hereinabove shall be modified according to [father's] work schedule by [father's] giving to [mother] notice of not less than one week prior to the end of the preceding month the following month's work schedule indicating work days and days off, notifying [mother] of visitations on days off beginning at 6:00 p.m. of one day through 6:00 p.m. of the second day following, said days off not to exceed two times per month. The altered standard visitation shall continue until [father] no longer works shift work or the minor child begins attending school, at which time standard visitation shall be in operation. In the event [father] is still working shift work at that time, IT IS FURTHER ORDERED that visitation will be scheduled on his days off that occur on weekends so as not to interfere with the child's school arrangements."

The only portion of the decree ordering Deborah to perform any action regarding visitation provides:

> IT IS ORDERED AND DECREED that DEBORAH BRISTER, Managing Conservator, shall surrender the child to DAVID EUGENE BRISTER, Possessory Conservator, at the beginning of each period of possession at 109 Presidio, Portland, Texas.

David's very first requests for visitation resulted in this dispute. In his motion to enforce the decree, David alleged that he modified the prescribed visitation schedule by giving Deborah his work schedule for the ensuing three months just three days after the decree was signed. That "work schedule" consisted of three months of a calendar with various dates marked "ON CALL", "NIGHTS" or "DAYS". At the beginning of the July month is the handwritten notation, "X indicates visitation rights to Ryan beginning at 6:00 p.m. ending 6:00 p.m. second day following". Some "on-call" and otherwise unmarked dates were also marked with a handwritten "X." David alleged that on the first date marked with an "X" he called and went by Deborah's home, but no one was there. He further alleged that on the next two dates marked with an "X" he either called or went by Deborah's home, but she refused to allow him to see Ryan. The trial court found that on each of the latter two occasions Deborah could have delivered possession to David but refused to do so, in violation of the decree. The trial court held Deborah in contempt and assessed punishment at a $500.00 fine for each of the two offenses and confinement in the county jail "for a total period of 30 days."[1] The trial court subsequently probated Deborah's punishment conditioned upon her payment of attorney fees and monthly statutory supervisory fees, participation in an outpatient family counseling program, and submission to 60 days' house arrest and electronic monitoring.[2]

To be enforceable by contempt a judgment must set out the terms for compliance in clear and unambiguous terms. See, e.g., Ex parte Reese, 701 S.W.2d 840 (Tex.1986); Ex parte Slavin, 412 S.W.2d 43 (Tex.1967). The judgment must also clearly order the party to perform the required acts. See Ex parte Gorena, 595 S.W.2d 841, 845 (Tex.1979). The provisions of the divorce decree enforced here fail to meet these standards. The contempt order in this case enforces, not the specific requirements of the court, but the cryptic instructions of a party given with the court's permission but without the certainty of de-

---

1. The contempt order is unclear whether the 30 days' imprisonment was assessed for each offense found by the trial court or for both of them together.

2. The original contempt judgment is unclear whether the two thirty-day sentences were to run concurrently or consecutively, if one assumes the judgment assesses two thirty-day jail sentences for contempt.

tailed provisions of a decree. Consequently, the contempt order must be set aside. *See Ex parte Gordon*, 584 S.W.2d 686 (Tex. 1979).

We are not unmindful of the difficulties trial judges face in setting visitation to accommodate parties' fluctuating work schedules. We do not criticize the trial judge for ordering visitation as he did. To allow such a vague and cryptic extrajudicial "modification" of visitation to be enforced by contempt for failure to deliver possession, however, with the very serious consequences of punitive fine and confinement for contempt, is to give one former spouse a power over the other that due process will not permit. In the context of divorce, one former spouse cannot be empowered to impose upon the other unilaterally by ambiguous calendar notations the conditions of delivering possession for visitation, enforceable by fine and imprisonment. Personal liberty is too precious for a court to delegate to a party the giving of the instructions, however ambiguous, to avoid its loss.

■ Although Deborah has not been jailed, the restraint on Deborah's liberty is sufficient to entitle her to habeas corpus review. *See Ex parte Williams*, 690 S.W.2d 243 (Tex.1985); *see also Basaldua v. State*, 558 S.W.2d 2 (Tex.Crim.App.1977). Because the trial court's judgment of contempt conflicts with this Court's opinion in *Slavin*, we grant the writ of habeas corpus and order relator discharged.

COOK, J., concurs with an opinion joined by HIGHTOWER, J.

GONZALEZ, J., dissents with an opinion joined by PHILLIPS, C.J., and SPEARS, J.

COOK, Justice, concurring.

I concur in the opinion of this court, but would also hold that the motion for contempt filed by David Brister failed to give specific notice of which provision of the divorce decree Deborah Brister allegedly violated. The motion quoted and specifically pointed out the "periods of possession" portions of the decree (including the "modification" provision), but failed to quote or otherwise specifically identify the portion of the decree directing Deborah to surrender the child.

Civil contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings. *Ex parte Johnson*, 654 S.W.2d 415, 420 (Tex.1983). Among these procedural due process rights is the right to reasonable notice of each alleged contumacious act. The due process requirement is one of "full and complete notification" of the charges alleged with a reasonable opportunity to meet the charges by defense or explanation. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979); *see also Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969). A contempt judgment rendered without such adequate notification is void. *Ex parte Gordon*, 584 S.W.2d at 688.

The legislature, with due regard to the due process rights of parents, enacted a section in the Texas Family Code setting forth the requirements of a motion for contempt of certain family law orders, judgments and decrees. The version of the Family Code provision in effect when David filed his motion [1] stated as follows:

The motion shall set out specifically and with particularity the provisions of the final order, decree, or judgment sought

---

1. In 1989 the legislature amended the provision and recodified it, effective November 1, 1989, as sections 14.311(a) and 14.312(b) of the Family Code. Those sections now provide:

   (a) Information. A motion under this subchapter must give the respondent, in ordinary and concise language, notice of the provisions of the final order, decree, or judgment sought

to be enforced, the manner of noncompliance, and the relief sought by the movant.

\* \* \* \* \* \*

   (b) Other Motions. If contempt for failure to obey an order relating to possession of or access to a child or for violation of other provisions of a final order, decree, or judgment is sought, the motion must allege the portion of the order allegedly violated, and, as to each violation for which punishment is

to be enforced and, in separate counts, the date, place, and, if applicable, the time of each occasion upon which the respondent has not complied with the order, the manner of the noncompliance, and the relief sought by the movant.

Act of July 20, 1987, ch. 73, § 5, 1987 Tex.Laws, 1st Spec.Sess. 225, 227, *repealed by* Act of July 16, 1989, ch. 25, § 17, 1989 Tex.Laws, 1st Spec.Sess. 74, 80–82.

This version of the statute and its predecessors has been held to require a very specific identification in the motion for contempt of the particular provisions of the order alleged to have been violated, as a statutorily set requirement for reasonable notice and procedural due process. *See e.g., Ex parte Conoly,* 732 S.W.2d 695, 698 (Tex. App.—Dallas 1987, orig. proceeding); *Ex parte Durham,* 708 S.W.2d 536, 537 (Tex. App.—Dallas 1986, orig. proceeding); *Ex parte Deckert,* 559 S.W.2d 847, 849 (Tex. Civ.App.—Houston [1st Dist.] 1977, orig. proceeding).

The contempt judgment in the instant case expressly recites it was based on two instances of "failing to surrender the minor child" by Deborah. David argues that his motion sufficiently identified the provision of the order to surrender the child in its paragraph 6, which states:

> 6. On two or more occasions, Respondent has failed to comply with the order of this Court by failing to surrender the minor child to Movant as ordered. Movant requests that the Court order a bond or security for compliance with the Court's order granting possession or access to the child.

This paragraph, taken with the allegations in other paragraphs about Deborah's conduct, may be sufficient to allege the *manner* of noncompliance, but it is not suffi-

sought, the date, place, and, if applicable, the time of each occasion on which the respondent has not complied with the order.
Tex.Fam.Code Ann. §§ 14.311(a), 14.312(b) (Vernon Supp.1991).

cient to point out the portion of the decree *directing* Deborah to surrender the child. I would hold that the contempt motion was insufficient because it failed to identify the precise provision of the order Deborah was alleged to have violated.

In sum, I would hold that the trial court's judgment of contempt conflicts with the statutory requirement for specific notice in the contempt motion of the particular provision in the order which is alleged to have been violated.

HIGHTOWER, J., joins in this opinion.

GONZALEZ, Justice, dissenting.

Without any complaint from Mrs. Brister that she was confused or that she lacked understanding of what her duties or obligations were in connection with the divorce decree's provision allowing her ex-husband to visit with his three-year-old son the court holds that the divorce decree is ambiguous. In my opinion, the decree was sufficiently certain and without a record of the contempt hearing before us, we must presume that all procedural requirements were met. Because I disagree with both the majority and concurring opinions, I will address them separately.

### DIVORCE DECREE

The court's opinion concludes that the divorce decree is too vague and ambiguous to be enforced. Apparently it was clear enough to Mrs. Brister. She does not allege that she complained to the trial court that she did not understand the divorce decree.[1] Nor has she complained to us that she did not understand the divorce decree. Rather, she has repeatedly urged this court to treat the motion for contempt like a charging instrument in criminal cases and hold that it was void because it did not

1. Even in criminal proceedings, which give meticulous attention to due process, a relator must prove that she first made complaint in the trial court to preserve her right to complain by writ of habeas corpus. *Ex Parte Harris,* 618 S.W.2d 369, 371 (Tex.Crim.App.1981).

recite the language in the divorce decree that required her to surrender the child.[2]

Even if we were to consider a complaint which was not made by the relator, the court's disapproval of the divorce decree will impede flexibility which is critical in dealing with family law matters. The "periods of possession" provision, commonly referred to as visitation, of the divorce decree clearly and correctly accommodated the father's variable shift work schedule.[3] Although this provision is more complicated to comply with or enforce, it is nevertheless, essential that we allow trial judges wide latitude in these matters in order to allow parents who do shift work to maintain a relationship with their children.

Many divorced parents do not have the luxury of working nine to five, Monday through Friday. Many jobs require employees to work weekends, evenings and night shifts. This situation poses a challenge for divorced parents seeking visitation. This problem is compounded by the fact that many divorces are not amicable. The parties harbor ill will toward each other and express this resentment by denying the noncustodial parent access to the child(ren) or by not paying child support. The majority and concurring opinions today

ignore this reality and today's unfortunate decision will severely restrict the ability of those possessory conservators who work shifts to have access to their children. The court gives sole managing conservators excuses for not complying with court mandates granting "periods of possession" to possessory conservators who do shift work. The majority opinion exacerbates the very problem that the possession order attempts to correct: assuring that children and noncustodial parents have an opportunity to continue to nurture the parent child relationship despite the end of their parents' marriage.

It is often said that the parents divorce each other and that parents do not divorce their children. The unfortunate result of today's opinion is that parents who do shift work will also divorce their children. The anger and frustration noncustodial parents experience when a custodial parent thwarts their efforts to see their children is discouraging. Before too long, they give up trying to enforce their visitation rights because they cannot afford the cost of litigation or they are emotionally drained or both. The children are victims once more.

The majority holds that the "period of possession provision" of the divorce decree

2. At oral argument before this court, the relator's attorney stated the following:

What I respectfully request the court to do is write an opinion that relates to the charging instrument in this case. I have no strong quarrel with the terms of the divorce decree in this case. As I stated before and I will state again to your honors, that the thrust of the argument is that if we make an analogy between the divorce decree and the penal code—the penal code contains things that people shouldn't do and if they do them, they can be indicted and they can go to jail.

In criminal cases defects in the charging instrument must be raised by motion to quash or they are waived. Criminal cases interpret the Code of Criminal Procedure as allowing a defendant to complain of lack of notice in a charging instrument by pretrial exception. *Gengnagel v. State*, 748 S.W.2d 227, 228 (Tex.Crim.App. 1988); *Graham v. State*, 657 S.W.2d 99, 104 (Tex.Crim.App.1983). Only if the charging instrument fails to allege the contemptuous acts is the instrument fundamentally defective. Here,

at most, the defects of the motion for contempt appear to be the failure to allege with reasonable certainty the acts relied upon. *Gengnagel,* 748 S.W.2d at 228. Therefore, this is a mere notice defect which must be raised in a timely manner or it is waived. *Id.* At the very least in a civil contempt case, the relator should raise defects in the motion for contempt at the hearing in the trial court to give the trial judge an opportunity to address the problem there before his order is scrutinized by this court.

3. The decree provided:

IT IS ORDERED that the standard visitation schedule set out hereinabove shall be modified according to [father's] work schedule by [father's] giving [mother] notice of not less than one week prior to the end of the preceding month the following month's work schedule indicating work days and days off, notifying [mother] of visitations on days off beginning at 6:00 pm of one day through 6:00 pm of the second day following, said days off not to exceed two times per month.

was vague and improperly worded and, thus, could not be enforced by contempt. The court does not provide the bench and bar any guidance as to how to accommodate parents engaged in shift work. Blind obedience to rules fashioned to govern people with traditional jobs (Monday through Friday—nine to five) is unacceptable. Furthermore, even Mrs. Brister's attorney admitted that he "has no quarrel with the terms of the divorce decree." [4] Therefore, since the relator did not attack the divorce decree, it is highly irregular for the court to make this argument for relator and then dispose of the case on the basis of a complaint the relator never made. This is a classic "straw-man" technique and it is unfair to Mr. Brister and his child.

Although not in effect at the time this divorce decree became final, the Texas Family Code was amended to provide for a "standard possession order," which the trial court should use in all cases. TEX.FAM. CODE ANN. § 14.033 (Vernon Supp.1991). However, even this standard possession order does not accommodate variable work schedules. It merely permits the court to "render an order that grants periods of possession of the child as similar as possible to those provided by the standard order." *Id.* at § 14.033(m). Therefore, even the Family Code does not provide guidance for courts entering this type of order.

Here, the court fears that the order gives the possessory conservator power to designate the terms of possession of the child under the court's order. However, the trial court has imposed limits on this power because the father was required to provide notice of his schedule not less than one week prior to the end of the month preceding the month when he would have possession of the child and he was limited to two periods of possession per month. This is a reasonable balance between employer, mother, father and child. Actually, instead of giving the father or possessory conservator unlimited power to set unilateral conditions for delivering possession, on the contrary, the court's opinion today gives a sole managing conservator the unlimited power to veto the terms of possession of parents who do shift work without the possessory conservator having any recourse but to seek modification of the divorce decree each time their schedule changes. This approach is impractical and not economically feasible for the average household who lives from month to month. For the sake of the children, we can and must devise better solutions to this problem.

Here, the possessory conservator acted in good faith and three days after the decree was signed promptly provided Mrs. Brister with a copy of his work schedule for August 1989 to December 1989. He was only required to give notice within a week before the beginning of the month in which he sought to enforce his right to

---

**4.** During oral argument, relator's attorney said: "[T]he main thrust of the petition for writ of habeas corpus in this case, frankly, is not the vagueness or an alleged vagueness in the divorce decree. It is mainly a defect or set of defects in the charging instrument in this case.
**Justice Cook:** "You are saying that the decree did not contain the magic language that the managing conservator shall surrender possession.
**Relator's attorney:** "No. I am not saying that, your honor. I am saying that the decree did say that—it was the charging instrument—the motion for contempt does not quote that portion of the decree as is required by law. Number one, and did not with specificity say the time, the place as ordered by the decree at which she allegedly failed to surrender the child—so I am not saying that about the decree—the relator is not—but only about

the motion for contempt.... I am focusing on the failure of the motion to allege the failure to surrender."
This is the same position the relator advanced in his brief.
With regard to requiring noncustodial parents to send work schedules to custodial parents, the following exchange took place at oral argument:
**Relator's attorney:** I think it would be better if they were retrieved from the employer. I think it would have more effect. Just as the employer is required, in other circumstances, to withhold earnings for child support.
**Justice Gonzalez:** How far in advance—are you suggesting that we put this obligation on the employer?
**Relator's attorney:** I would say that a managing conservator should have those at least 6 months in advance....

possession. On each month, he clearly indicated two periods of possession that were very similar to the standard possession provision included in the divorce decree. **Ironically, his initial requests for possession were for the first and third weekend in August and, thus, followed the standard possession order.** Despite this notice and his phone calls to notify Mrs. Brister of his intent to exercise his rights to possession of the child, Mrs. Brister refused to comply with the divorce decree the very first time Mr. Brister tried to see his child. **Mrs. Brister did not and does not now complain about the wording of the decree.** She offered no explanation of her failure to comply with the judge's order. Therefore, the judge correctly found Mrs. Brister in contempt of court and ordered a reasonable period of confinement in her own home. We ought not take this weapon from the trial courts. Sometimes drastic measures are necessary to get a person's attention. Since the trial court did not exceed its jurisdiction, the order of contempt and confinement is not void and Mrs. Brister is not entitled to a writ of habeas corpus on this ground.

## MOTION FOR CONTEMPT

The concurring opinion attacks the motion for contempt as basis for granting relief to Mrs. Brister by way of habeas corpus. For a contempt proceeding to be subject to collateral attack by a habeas corpus petition, it must be void, not merely voidable or erroneous. *See Ex Parte Filemyr*, 509 S.W.2d 731, 734 (Tex.Civ.App.—Austin 1974, orig. proceeding) (contempt order that failed to state how decree was violated was void); *Ex Parte Rhodes*, 352 S.W.2d 249, 250 (Tex.1962, orig. proceeding) (order must be void not merely erroneous). Unless the petition for habeas corpus shows that the contempt judgment is void on its face or is so completely without

evidentiary support as to render it void the petition will be denied. *Ex Parte Butler*, 523 S.W.2d 309, 311 (Tex.Civ.App.—Houston [1st Dist.] 1975, orig. proceeding) (evidence showed violation of order and no valid defense); *Ex Parte Henderson*, 512 S.W.2d 37, 39–40 (Tex.Civ.App.—El Paso 1974, orig. proceeding) (review of evidence is to determine whether trial court's findings are so completely without evidentiary support as to render judgment void). Therefore, in the absence of a statement of facts, the court should presume there was evidence to support the trial court's judgment of contempt. *Ex Parte Savelle*, 398 S.W.2d 918, 921 (Tex.1966); *Ex Parte Wagner*, 368 S.W.2d 185, 187 (Tex.1963).

The concurring opinion states that the motion for contempt was insufficient to support contempt in this case because it did not provide notice of the contemptuous conduct. However, the motion for contempt was not completely void of notice; it referred the court to the provisions of the divorce decree that set out both parties' rights to possession of the child. Although it incorporated the divorce decree by reference, the motion for enforcement did not recite the exact language requiring Mrs. Brister to surrender the child. Thus, the motion did provide Mrs. Brister with notice regarding the contemptuous conduct. More importantly, there is no evidence that Mrs. Brister ever brought this claim to the attention of the trial court at the hearing.[5]

We have no statement of facts from this contempt hearing and Mrs. Brister did not file a written motion attacking the contempt motion on any ground. Therefore, error was not preserved as to this contention and Mrs. Brister cannot complain here. Furthermore, assuming *arguendo*, that Mrs. Brister did object to the motion for contempt on these grounds, the order does provide notice. It specifically refers Mrs. Brister to the divorce decree and the por-

---

5. Commentators on the procedures for obtaining relief through writ of habeas corpus advise relator to file a complete record including transcript and statement of facts. *See* Greenhill & Beirne, *Habeas Corpus Proceedings in the Supreme Court of Texas*, 1 St. Mary's L.J. 1, 2 (1969); W. Dorsaneo, 5 Texas Litigation Guide § 133.110(1)(b) (1990).

tions regarding when Mr. Brister shall have possession. This did not result in the motion for contempt being completely devoid of notice. Therefore, Mrs. Brister's failure to raise the adequacy of notice at the hearing on this motion constituted a waiver.

The concurring opinion relies on a series of cases to support its position that the motion for enforcement did not provide "full and complete notification in accordance with the requirements of due process and the Texas Family Code." In *Ex Parte Conoly*, the court of appeals held that the relator could not be held in contempt for acts which occurred after the motion for contempt was filed because the relator would not have any notice of his alleged contemptuous conduct. 732 S.W.2d 695, 698 (Tex.App.—Dallas 1987, orig. proceeding). In *Ex Parte Durham*, the court held that the relator could not be held for longer than the original order of confinement provided when he had no notice that the term of confinement would be increased. 708 S.W.2d 536, 537 (Tex.App.—Dallas 1986, orig. proceeding). In *Ex Parte Deckert*, the court held that the relator could not be held in contempt for violation of a court order which ordered three separate acts where the motion for contempt did not specify which act or acts he had not performed. 559 S.W.2d 847, 849 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding). The motion for contempt merely stated that the relator failed to comply with the order of a specific date. *Id.* Finally, the order of commitment was void because it recited that relator was in violation of the divorce decree which had been superseded by subsequent orders. *Id.*

These cases are distinguishable from the instant case because Mrs. Brister was given notice of her violation of the periods of possession provision of the divorce decree and the divorce decree was valid and in effect at the time of her acts of contempt. Furthermore, both the motion for contempt and the order of commitment specifically refer to the divorce decree and recite the date and place of the two acts of contempt. Therefore, the contempt proceeding was not void and is not subject to collateral attack by writ of habeas corpus.

It is a sad day for Mr. Brister and the trial judge who took into consideration the special circumstances of Mr. Brister's work schedule in molding a reasonable divorce decree to meet Mr. Brister's needs without impinging too much on Mrs. Brister's rights. But for Mrs. Brister's lack of good faith, it may have worked. Mr. Brister is denied the love, companionship and society of his son. His three-year-old son is denied the emotional sustenance of his father. Even though Mrs. Brister willfully offended the dignity and authority of the trial court, on hyper technical grounds, my colleagues choose not to hold her accountable for her actions. No new law is made. Merely rote incantations of old law without any guidance to the bench and bar as to how to deal with child visitation rights for parents who do shift work. Mrs. Brister may have won; but the child, as well as all of us lose in the process. If my colleagues insist on this hyper technical application of state law, they at least owe it to the people to suggest how this problem can be remedied.

Regrettably, today's decision will dissuade trial courts from tailoring its orders to the realities of the parents' particular circumstances. The dubious gain in certainty is not worth forcing "one size fits all" orders on the parties.

For these reasons, I dissent. I would hold that Mrs. Brister is not entitled to relief under either basis and would deny her petition.

PHILLIPS, C.J., and SPEARS, J., join in this opinion.