02-10-361-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00361-CV 

 

 


 
 
 In re Gina P. Honermann-Garinger
 
 
  
 
 
 RELATOR
 
 
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

------------

 

original proceeding

------------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

 

Relator
Gina P. Honermann-Garinger (Gina) has filed a
petition for writ of habeas corpus seeking relief from a September 30, 2010 AOrder
of Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc.@  For the reasons set forth below, we will construe
Gina’s petition as a petition for writ of mandamus, grant relief, and order the
trial court to set aside its September 30, 2010 order, including the provision
requiring Gina to pay the attorney’s fees of Real Party in Interest Ronald Van
Baker, Jr. (Ronald).

II.  Factual Background:
Ronald=s Motion for
Enforcement

and
the Trial Court=s Order of
Enforcement by Contempt

 

Although
the factual background leading up to the trial court=s
September 30 order is extensive and somewhat convoluted, the facts pertinent to
this proceeding are straightforward and undisputed.  Ronald, who is Gina=s
ex-husband and father of their child P.W.W.B, filed a first amended motion for
enforcement alleging that Gina had violated a November 15, 2001 AOrder
Modifying Prior Order@ that imposed on both Gina
and Ronald Athe
duty to inform the other parent in a timely manner of significant information
concerning the health, education, and welfare of the child.@  Ronald=s
first amended motion for enforcement also alleged that Gina had violated an
April 30, 2009 order that the trial court had pronounced orally in open court
requiring the following of both parents: 

Any time either one
of you take this person—this kid to see a doctor, within 72 hours—you have the
independent right and I=m not changing
that.  But within 72 hours you are to
send an e-mail to the other parent that says you took the kid to the doctor and
you are to describe what the doctor said. . . . 
So in writing, 72 hours, by email. 

 

Ronald
alleged that Gina had violated both the November 15, 2001 order and the April
30, 2009 oral pronouncement by taking P.W.W.B. for therapy and counseling every
two weeks from May 2008 through April 2009 without notifying Ronald.

On
August 27, 2010, the trial court heard Ronald=s
motion for enforcement. Also on August 27, 2010 the trial court signed an
“Order on Motion for Enforcement/Clarification of Prior Order” setting forth,
with some modifications, its prior April 30, 2009 oral pronouncement.

On
September 30, 2010, the trial court signed the AOrder
of Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc@
that Gina now challenges.[2]  That order provides:

The Court finds that
Respondent [Gina] is guilty of separate violations of the Order Modifying Prior
Order, signed November 15, 2001 in Cause No. 2000-60475-393, styled AIn the Interest of
[P.W.W.B.], a Child,@ in 393rd of Denton County
that appears in the minutes of this Court and states in relevant part on page
3, as follows:

 

AIT IS ORDERED that,
at all times, [Ronald] and [Gina], as parent joint managing conservators, shall
each have the following duties:

 

1.       the duty to inform the other the other [sic]
parent in a timely manner of significant information concerning the health,
education, and welfare of the child.@

 

The Court also finds
that Respondent [Gina] is guilty of separate violations of the order made by
this Court on April 30, 2009.  This Court
made the following order in open Court in the presence of both the Movant [Ronald] and Respondent [Gina] and their counsel:

 

AAny time either one
of you (referring to Movant and Respondent) take this
person—this kid to see a doctor, within 72 hours—you have the independent right
and I=m not changing
that.  But within 72 hours you are to
send an e-mail to the other parent that says you took the kid to the doctor and
you are to describe what the doctor said. . . . 
So in writing, 72 hours, by email.@

 

As a
result of Gina=s
alleged violations of the November 15, 2001 order and the April 30, 2009 oral
pronouncement, the trial court found Gina in contempt, Aassessed@
attorney=s
fees of $5,000 against her, and ordered her punished by confinement “for a
period of 180 days for each separate violation.”  The trial court ordered Gina=s
commitment suspended Aprovided that [Gina] timely
complies with the following terms and conditions:@

1.       IT IS ORDERED that Respondent [Gina] pay
$5,000, attorneys= fees and costs, by cash,
cashier=s check, or money
order to Koons, Fuller, Vanden
Eykel, and Robertson, P.C., at 2311 Cedar Springs,
Suite 300, Dallas, Texas, 75201, by September 24, 2010 at 4:00 p.m.

 

2.  IT IS ORDERED that should Respondent [Gina]
be held in contempt for violation of any duty to keep Petitioner informed of
all educational, medical, psychological or therapeutic information as set forth
in the other orders of this Court before the child=s 18th birthday or
fail to pay the attorneys= fees and costs as
ordered above, the suspension of commitment shall be lifted and Respondent [Gina]
shall be committed to the Denton County Jail for the period of confinement ordered
above.

 

III.  The Contempt Order
is Void

 

          The
trial court’s order holding Gina in contempt is based on her alleged violations
of the November 15, 2001 order and of the April 30, 2009 oral
pronouncement.  As discussed below, the
November 15, 2001 order is not specific enough to be enforceable by
contempt.  And the contemptuous acts that
Ronald alleged, and that the trial court found Gina had committed, occurred
from May 2008 through April 2009—prior
to the trial court’s April 30, 2009 oral pronouncement; so the contemptuous
acts alleged by Ronald and found by the trial court do not violate the trial
court’s not-yet-existing April 30, 2009 oral pronouncement.  Thus, as discussed in more detail below, the September
30, 2010 AOrder
of Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc” is void and will not support imposition of
a fine, attorney’s fees, or confinement.

A.  November 15,
2001 Order Not Enforceable by Contempt

 

To be enforceable by contempt, a judgment or order must set out
the terms for compliance in clear and unambiguous terms.  Ex
parte Brister, 801 S.W.2d
833, 834 (Tex. 1990) (orig. proceeding).  The order underlying a contempt judgment must
set forth the terms of compliance in clear, specific, and unambiguous terms so
that the person charged with obeying the order will readily know exactly what
duties and obligations are imposed upon her.  Ex
parte Chambers, 898 S.W.2d 257, 259
(Tex. 1995) (orig. proceeding).  The judgment or order must also clearly order
the party to perform the required acts.  Ex parte Gorena,
595 S.W.2d 841, 845 (Tex. 1979) (orig.
proceeding). 
The question of whether an order is enforceable by contempt depends on
whether the order is definite, certain, and not susceptible to different
meanings or constructions.  Ex parte Kraus, 863
S.W.2d 104, 106 (Tex. App.—Corpus Christi 1993, orig. proceeding).  The focus is on the wording of the judgment
or order itself.  Ex parte Reese, 701 S.W.2d
840, 841 (Tex. 1986) (orig. proceeding).  If the court’s order requires inferences or
conclusions about which reasonable persons might differ, it is insufficient to
support a judgment of contempt.  Chambers, 898 S.W.2d at 260.

The
November 15, 2001 AOrder Modifying Prior Order@
that imposed on both Gina and Ronald Athe
duty to inform the other parent in a timely manner of significant information
concerning the health, education, and welfare of the child” does not order or
command Gina or Ronald to perform any act.  It does not require either Gina or Ronald to
notify the other of a doctor’s appointment. 
It does not impose any time parameter for either Gina or Ronald to
provide information to the other—only “a timely manner.”  It does not set forth what information is to
be provided—only “significant information.”  As a matter of law, the provision of the
November 15, 2001 order imposing on Gina Athe
duty to inform the other parent in a timely manner of significant information
concerning the health, education, and welfare of the child” is not sufficiently
specific to be enforced by contempt.  See,
e.g., Brister, 801 S.W.2d at 835
(holding “vague and cryptic” visitation provisions in decree not enforceable by
contempt); Reese, 701 S.W.2d at 841–42
(holding agreed judgment requiring company to “take back” water system and to
“begin to restore it to proper condition” lacked sufficient specificity to be
enforceable by contempt); In re Davis,
305 S.W.3d 326, 331 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding)
(holding order’s provision requiring mother to call child’s primary care
physician “in the event that a child appears to be ill upon awakening on a
regularly scheduled school day” lacked sufficient specificity to be enforceable
by contempt); In re Johnson, 996
S.W.2d 430, 435–36 (Tex. App.—Beaumont 1999, orig. proceeding) (holding order that
required contemnor to produce documents but that did not specify the date on
which the documents were to be produced was unenforceable by contempt); Kraus, 863 S.W.2d at 107 (holding order
requiring alleged contemnor to “conduct all acts necessary to secure possession
of the child” and to “assist with the immediate return of the child to the
Court” was vague, ambiguous, and not enforceable by contempt).

B.      Alleged
Contemptuous Acts Occurred Prior to April 30, 2009

Oral Pronouncement; Contempt Not Available

                   

Ronald
alleged, and the trial court found, that Gina had violated both the November
15, 2001 order and the April 30, 2009 oral pronouncement by taking P.W.W.B. for
therapy and counseling every two weeks from May 2008 through April 2009 without
notifying Ronald.  But these allegedly contemptuous
acts—taking place between May 2008 and April 2009—occurred prior to the trial
court’s April 30, 2009 oral pronouncement that Gina allegedly violated.

An
alleged contemnor cannot be held in constructive contempt of court for actions
taken before the court reduces its order to writing.  Ex parte Guetersloh, 935 S.W.2d 110, 111 (Tex. 1996) (orig.
proceeding) (holding alleged contemnor could not be held in contempt for
violation occurring between oral order and reduction of oral order to written
order); Chambers, 898 S.W.2d at 262
(same); Ex parte Price,
741 S.W.2d 366, 367–68 (Tex. 1987) (orig. proceeding) (same); Ex parte Sellers, 982 S.W.2d 85, 87 (Tex. App.—Houston
[1st Dist.] 1998, orig. proceeding) (same).

Because
the trial court’s April 30, 2009 oral pronouncement had not occurred—that is,
it did not exist—when Gina allegedly violated it by taking P.W.W.B. for therapy
and counseling every two weeks from May 2008 through April 2009 without
notifying Ronald, Gina may not be held in contempt for violating the
not-yet-in-existence April 30, 2009 oral pronouncement of the trial court.  See
Guetersloh, 935 S.W.2d
at 111; Chambers, 898 S.W.2d at 262; Price, 741 S.W.2d at 367–68; In re
Sellers, 982 S.W.2d at 87.

C.      Gina is
Entitled to Relief

 

          Ronald argues in his response that
Gina is not entitled to habeas relief because she has not yet been
confined.  In her reply, Gina argues that
this court possesses jurisdiction over the trial court’s September 30, 2010
order, if not via a petition for writ of habeas corpus, then via a petition for
writ of mandamus.

Generally,
contempt orders that do not involve confinement cannot be reviewed by writ of
habeas corpus.  In re Long, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding).[3]  A contempt judgment may be attacked by a
petition for writ of habeas corpus when the contemnor is confined or by a
petition for writ of mandamus if the contemnor is not confined.  In re
Office of Attorney Gen. of Tex., 215 S.W.3d 913, 916 (Tex. App.—Fort Worth
2007, orig. proceeding).

Here, Gina was found in contempt and ordered to spend 180 days
in jail for each violation; her commitment to jail was ordered suspended so
long as she complied with certain conditions—payment of attorney’s fees and
compliance with her “duty to keep Petitioner informed of all
educational, medical, psychological or therapeutic information as set forth in
the other orders of this Court before the child=s 18th
birthday.”  The
contempt order simply orders Gina to pay attorney’s fees and to do what she is
already required to do—comply with orders of the trial court.  Gina is thus not confined pursuant to, or
restrained by, the September 30, 2010 contempt order.  See, e.g., Ex parte Hughey, 932 S.W.2d 308, 310–11
(Tex. App.—Tyler 1996, orig. proceeding); Ex
parte Sealy, 870 S.W.2d 663, 665–66 (Tex. App.—Houston [1st Dist.] 1994,
orig. proceeding).  Because Gina
is not confined pursuant to, or restrained by, the September 30, 2010 contempt
order, mandamus, not habeas, is the appropriate remedy for the trial court’s
void September 30, 2010 AOrder
of Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc.”

In
the interests of justice and looking to the substance of Gina’s petition, rather
than its caption, we construe her petition for writ of habeas corpus as a
petition for writ of mandamus.  See Surgitek, Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex. 1999)
(instructing us to look to the substance of a pleading rather than its caption
or format to determine its nature); see
also In re Coppock, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding)
(noting, in granting habeas corpus, that court of appeals had treated petition
for writ of habeas corpus as petition for writ of mandamus); In re Smith, 310 S.W.3d 908, 909 (Tex.
App.—Eastland 2010, orig. proceeding) (granting mandamus relief based on
petition for writ of habeas corpus alternatively seeking mandamus relief); Motor Veh. Bd. v. El Paso Indep. Auto
Dealers Ass’n, 1 S.W.3d 108, 111 (Tex. 1999) (recognizing policy of
construing rules of appellate procedure liberally so that decisions turn on
substance rather than procedural technicality); Ex parte Casillas, 25 S.W.3d 296, 298 n.1 (Tex. App.—San Antonio
2000, orig. proceeding) (construing “petition for writ of habeas corpus and/or
writ of mandamus” as petition for writ of habeas corpus because outstanding
capias for relator’s arrest existed).[4]

For
the reasons set forth above, the September 30, 2010 contempt order is
void.  Gina has no adequate remedy at law
to obtain relief from this contempt order because a contempt order is not
appealable.  See Office of Attorney Gen. of Tex., 215 S.W.3d at 916.  Because the September 30, 2010 contempt order
is void and because Gina has no adequate remedy at law, we will conditionally
grant a writ of mandamus directing the trial court to set aside and vacate the September
30, 2010 AOrder
of Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc.”  See Rosser v. Squier, 902 S.W.2d 962,
962 (Tex. 1995) (granting mandamus relief from void portion of contempt
judgment); Sealy, 870 S.W.2d at 666
(same).

IV.  Conclusion

We conditionally
grant a writ of mandamus and order the trial court to immediately set aside its
September 30, 2010 AOrder of Enforcement by
Contempt and Suspension of Commitment Nunc Pro Tunc.”  The writ will
issue only if the trial court fails to comply.

 

 

SUE WALKER
JUSTICE

 

PANEL:  DAUPHINOT, WALKER,
and GABRIEL, JJ.

 

DELIVERED:  November 17, 2010











[1]See Tex. R. App. P. 47.4.





[2]The
trial court had previously signed a September 8, 2010 “Order of Enforcement by
Contempt and Suspension of Commitment” and a September 27, 2010 AOrder of
Enforcement by Contempt and Suspension of Commitment Nunc
Pro Tunc.@  





[3]Exceptions exist
to this general rule, typically when the contempt order places some other type
of restraint on the relator’s liberty.  See,
e.g., Brister, 801 S.W.2d at 835 (holding relator
entitled to habeas relief when she was ordered to submit to house arrest as
condition of suspension of commitment); Ex
parte Williams, 690 S.W.2d 243, 244 (Tex. 1985) (orig. proceeding)
(explaining that relator was under “restraint” although out on bond); In re Ragland, 973 S.W.2d 769, 771 (Tex.
App.—El Paso 2001, orig. proceeding) (holding habeas relief appropriate when
relator restrained by requirement that he perform community service every week
for a year).   





[4]See also In re Clark, No.
10-03-00037-CV, 2004 WL 1632768, at *2–3 (Tex. App.—Waco July 21, 2004, orig.
proceeding) (mem. op.) (analyzing cases determining
whether habeas corpus or mandamus is the appropriate remedy and construing relator’s mandamus petition as petition for writ of habeas
corpus).