**Opinion issued July 16, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00234-CV

———————————

## DUSTIN ANDREW GULLEY, Appellant

## V.

## AMY SUZANNE GULLEY, Appellee

On Appeal from the 253rd District Court
Chambers County, Texas
Trial Court Case No. 18-DCV-0099

## MEMORANDUM OPINION

Dustin Gulley and Amy Gulley are joint managing conservators of A.L.G. Dustin is A.L.G.'s paternal uncle, and A.L.G. resides primarily with him. Amy is A.L.G.'s mother. Dustin appeals the trial court's January 3, 2018 possession order ("possession order"), arguing that the order constituted a substantive change in the

access and possession terms of the final SAPCR decree in violation of section 157.423 of the Texas Family Code. He also appeals the trial court's January 2, 2018 attorney's fees order ("attorney's fees order") that characterized an attorney's fee award as child support.[1] We agree and reverse.

## Background

A.L.G.'s father, Dustin's brother, is deceased. In June 2016, Dustin filed a suit seeking to be named A.L.G.'s primary conservator. In April 2017, Dustin and Amy appeared in the trial court and announced that they had reached an agreement in consultation with the child's amicus attorney. The agreement was approved by the trial court on the same day[2] and a written order incorporating the agreement was signed on June 30, 2017.

The SAPCR order awarded primary possession to Dustin, limiting Amy to periodic, limited possession. A drug testing provision of the possession order stated:

> It is ORDERED that DUSTIN ANDREW GULLEY has the right to request AMY LOCKHART GULLEY to submit to urine and hair drug testing once per month via TalkingParents.com. Notice may not be sent on Friday through Sunday at 9:00 a.m.
>
> IT IS FURTHER ORDERED that AMY SUZANNE LOCKHART[3] shall schedule an appointment and appear at National Screening

---

[1] Both orders that Dustin appeals were issued in Harris County. Since that time, the case has been transferred to Chambers County.

[2] Amy did not sign the agreement, but the agreement was read into the record and ordered by the court.

[3] Amy's name appears in the orders as both Amy Lockhart Gulley and Amy Suzanne Lockhart.

2

Center, 407 Fannin, Houston, Texas 77002, . . . within 24 hours of DUSTIN ANDREW GULLEY sending AMY SUZANNE LOCKHART notice via TalkingParents.com with appropriate photographic identification to submit to urine and hair drug testing. IT IS FURTHER ORDERED that AMY SUZANNE LOCKHART shall remain there until such tests are completed and permit the taking of hair, urine, blood, body fluid, or tissue samples from her respective person to enable the drug screeners to make and perform such tests for the Court with a view to informing the Court of their professional opinions concerning the possibility, probability, or certainty of whether AMY SUZANNE LOCKHART is using, or has used, illegal drugs (not prescribed) or alcohol such as:

[LIST OF DRUGS] . . . .

It IS FURTHER ORDERED that if AMY SUZANNE LOCKHART fails or refuses to appear at National Screening Center, 407 Fannin, Houston, Texas 77002 . . . within 24 hours of DUSTIN ANDREW GULLEY sending AMY SUZANNE LOCKHART notice via TalkingParents.com with appropriate identification and permit the taking of [samples] from her respective person, AMY SUZANNE LOCKHART's results shall be deemed positive. In the event, AMY SUZANNE LOCKHART's tests (sic) at a higher level than 3.66 picograms for marijuana, it is ORDERED that test shall be deemed positive. In the event that AMY SUZANNE LOCKHART's tests positive, whether actual positive result or deemed positive result, for any type of drug whether cocaine or any other type of drug without a valid prescription prescribed to AMY SUZANNE LOCKHART, it is ORDERED that all AMY SUZANNE LOCKHART's periods of possession set forth in the Possession Order below are suspended pending further order of the Court. IT IS ORDERED that the drug testing as prescribed herein shall be a zero-tolerance drug test.

3

The drug testing language is repeated in the section of the SAPCR decree covering possession. It reiterates that if Amy tested higher than 3.66 picograms[4] for marijuana, the test would be deemed positive, and in the event of a positive test, whether actually positive or deemed positive, for any drug, Amy's periods of possession would be suspended until further order of court.

On August 1, 2017, just over a month after the order was entered, Amy filed a motion for enforcement of possession and access to A.L.G. She amended her motion on October 24, 2017. The amended motion alleged six occasions when Dustin did not have A.L.G. available for Amy. Amy asked the trial court for a variety of relief, including holding Dustin in criminal and civil contempt for each violation, granting her additional periods of possession, and ordering Dustin to pay attorney's fees. Amy also included a request that, "if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on [Dustin] and giving [Dustin] a reasonable time within which to comply." *See* TEX. FAM. CODE § 157.424 (request for clarification may be brought with motion for enforcement). Amy alleged that attorney's fees were necessary to ensure A.L.G.'s physical or emotional health or welfare and should be enforceable by any means available for

---

[4] While the full measurement ratio is not in the record, drug testing results for marijuana metabolites are generally expressed as picograms per milligram (pg/mg).

4

enforcement of child support including contempt but not including income withholding. *See* TEX. FAM. CODE § 157.167(b).

After a hearing, the trial court did not find Dustin in contempt, finding instead that certain terms of the order were not specific enough to be enforced by contempt. The court entered the possession order adding language requiring Dustin to send notice of a drug test to Amy "at a reasonable time" that gives her "an actual 24 hours to comply." The court also added language that if Amy tested higher than 3.66 picograms "for ingestion" of marijuana, the test would be deemed positive. The trial court found that Dustin violated the original order by failing to surrender A.L.G. to Amy on two occasions and ordered Dustin to pay $1,500 in attorney's fees to Amy's attorney.

Dustin filed a motion for de novo review regarding the attorney's fees award. On January 3, 2018, the presiding judge issued the attorney's fees order that confirms the $1,500 fee award but specified that it would be enforceable both as a debt and as child support. Dustin appealed.

### Clarification or Substantive Change

In his first two issues, Dustin contends that the trial court erred in issuing the possession order. He argues that the order made substantive changes to the possession terms in the final SAPCR decree. We agree.

## A.    Statutory Background

Section 157.421 of the Texas Family Code grants a trial court the authority to clarify a previous order on motion of a party or on the court's own motion by rendering an order that is "specific enough to be enforced by contempt." TEX. FAM. CODE § 157.421. "To be enforceable by contempt, a judgment must set out the terms for compliance in clear and unambiguous terms." *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990 ) (orig. proceeding). "The judgment must also clearly order the party to perform the required acts." *Id.* The judgment must be sufficiently specific such that the person charged with obeying the judgment will readily know exactly what duties and obligations are imposed. *See Ex parte Chambers*, 898 S.W.3d 257, 260 (Tex. 1995) (orig. proceeding). If the court's judgment requires inferences or conclusions about whether particular conduct is encompassed by the judgment and concerning which reasonable person might differ, the judgment is insufficient to support a contempt order. *Id.*

When clarifying an order, the trial court "may not change the substantive provisions of an order to be clarified . . . ." TEX. FAM. CODE § 157.423(a). The Family Code does not define "substantive change," but Texas courts look to judgments nunc pro tunc to provide guidance on what constitutes a "substantive change" because a "clarification order is analogous to a judgment nunc pro tunc in that it cannot substantively change a final order." *In re Marriage of Ward*, 137 S.W.3d 910, 913

6

(Tex. App.—Texarkana 2004, no pet.); *see also Weido v. Weido*, No. 01-15-00755-CV, 2016 WL 1355764, at *2 (Tex. App.—Houston [1st Dist.] Apr. 5, 2016, no pet.) (mem. op.). Such a judgment can only correct a clerical error. *See Ward*, 137 S.W.3d at 913.

In the nunc pro tunc context, two types of errors exist: (1) judicial errors and (2) clerical errors. A substantive change occurs when the error is "judicial," that is, the trial court corrects an error that "results from judicial reasoning or determination." *Id.* A trial court can enter a judgment nunc pro tunc only to correct a clerical error, i.e. an error that "results from inaccurately recording the decision of the court. . . ." *Id.* "When deciding whether a correction is of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. . . . Thus, even if the court renders [judgment] incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition." *Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986) (internal citations removed).

## B.     Standard of Review

The determination of whether an alleged error is "clerical or judicial is a question of law." *Dickens v. Willis*, 957 S.W.2d 657, 659 (Tex. App.—Austin 1997, no pet.); *see also Weido*, 2016 WL 1355764, at *2. Before deciding whether the error is clerical or judicial, however, the trial court must first determine whether it

previously rendered judgment and the judgment's contents. *Escobar*, 711 S.W.2d at 232; *Dickens*, 957 S.W.2d at 659. Proof of a clerical error must be supported by "clear, satisfying, and convincing" evidence. *Dickens*, 957 S.W.2d at 659.

We may review the finding for legal and factual sufficiency of the evidence. *Weido*, 2016 WL 1355764, at *3. If we determine that an error exists, we consider the legal question of whether the error is clerical or judicial. *See McMahahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We examine this legal question de novo. *See Escobar*, 711 S.W.2d at 232 (stating that question is of law); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to *de novo* review.").

## C. Analysis

Dustin contends that the trial court erred in revising the possession order because there is no evidence that the original judgment contained error, and assuming there was error, a "clarification" order was inappropriate because the change was substantive rather than clerical. We agree.

It is a "heavy burden . . . to establish that the error involved is clerical in nature. . . and, thus, one for which a clarification order may be entered." *Ward*, 137 S.W.3d at 914. If an error existed in the order, a clarification was not appropriate in this context because the changes made were substantive changes. We can look to the plain meaning of the words in the decree to determine whether an error is judicial or

8

clerical. For an error to be clerical rather than judicial, and thus correctable by a clarification order, correcting the error in the wording of the order must not require "additional judicial reasoning." *Id.* "The only basis for clarifying a prior decree is when a provision is ambiguous and non-specific." *Lundy v. Lundy*, 973 S.W.2d 687, 688–89 (Tex. App.—Tyler 1998, pet. denied).

*Ward* compared two cases to illustrate the difference between clerical and judicial error. 137 S.W.3d at 913–16. In one case, the recorded land deed neglected to convey to the buyer an easement, which the land sale contract stated the buyer should receive. *Id.* at 914 (discussing *Andrews v. Koch*, 702 S.W.2d 584, 586 (Tex. 1986)). The error was clerical because the contract showed that the parties intended to convey the easement. *Id.* at 914. In the second, the final judgment listed damages for each of 87 lost bales of cotton but accidently omitted the value of six bales. *Id.* (discussing *Missouri Pac. Ry. Co. v. Haynes*, 18 S.W. 605 (1891)). This error was judicial because it required additional judicial reasoning to find the value of the six bales. *Id.*

The trial court's January 2, 2018 possession order made two changes to the possession and access terms of the final SAPCR decree. We will review each in turn.

### 1. The notice provision

The possession order added language regarding when Dustin could send Amy notice of a drug test. Dustin contends that this was an improper modification that required judicial reasoning, not a correction of a clerical error. We agree.

The possession order required Dustin to send notification for drug testing to Amy at reasonable time that provided Amy with an actual 24 hours to comply. But this change was not a clarification, it was an improper modification that added to Dustin's obligations. *See* TEX. FAM. CODE § 157.423; *In re V.M.P.*, 185 S.W.3d 531, 534 (Tex. App.—Texarkana 2006, no pet.) (clarification removing language from divorce decree was an impermissible substantive change because it changed the father's child support obligation). The final SAPCR decree's possession and access terms were specific, non-ambiguous, and could be enforced by contempt. The decree clearly articulated each party's obligations. The final decree includes: Dustin may request a drug test from Amy once each month; he must send the request to Amy via a specific coparenting website; both parties must maintain a subscription to the website; Dustin may not send the notice to Amy on Fridays through Sundays at 9:00 a.m.; Amy must schedule an appointment and appear for testing at a specified testing center within 24 hours of Dustin sending notice; and if Amy fails to do so, her test is deemed positive. By adding that Dustin must send the request within a reasonable time that gives Amy an actual 24 hours to comply, the trial court used judicial

reasoning to add to the order. *See Ward*, 137 S.W.3d at 914. Because the original text was unambiguous, the trial court was without authority to clarify the order. *See Lundy*, 973 S.W.2d at 688–89.

### 2. The drug testing results

The possession order also changed the final SAPCR decree's drug testing provision to read: "In the event [Amy] tests at a higher level than 3.66 picograms *for ingestion of marijuana*, the test is deemed positive." (emphasis added). Dustin argues that the original order was specific and unambiguous, providing that any level of marijuana higher than 3.66 picograms would be deemed positive. We agree.

The addition of "ingestion" was a substantive change because the original order did not differentiate between ingestion of marijuana and other environmental exposure to it. The trial court exercised judicial reasoning by determining that the intent of the original order was only ingestion of marijuana and inserting the additional language. In *R.F.G.*, the trial court erred by modifying an unambiguous divorce decree. *In re R.F.G.*, 282 S.W.3d 722, 728 (Tex. App.—Dallas 2009, no pet.). The divorce decree awarded the husband the "bed" but the wife argued that this only entitled him to the "mattress and box spring," not the "bedframe." *Id.* The trial court erred in looking to other, extrinsic evidence to determine the parties' intended definition of a "bed." *Id.* at 728–29. The appellate court held that the plain, unambiguous meaning of "bed" included the bedframe, and the trial court's

11

clarification requiring the husband to pay for the frame was an impermissible substantive change. *Id.* Similarly, the plain, unambiguous meaning of the marijuana testing provision states that if the result is any level over 3.66 picograms, the test is deemed positive. It does not differentiate between ingestion or other environmental marijuana exposure. The trial court erred in considering extrinsic evidence from the enforcement hearing to determine the intent of the parties. Since the original order was unambiguous, the trial court was without authority to clarify the judgment. *See Lundy*, 973 S.W.2d at 688–89.

Accordingly, we strike the "Clarification of Prior Order" section and the language "the previous order is clarified as listed above" from the "Relief Granted" section of the court's January 2, 2018 possession order.

**Attorney's Fees**

Dustin argues that the trial court erred in making the judgment for fees enforceable as child support because there was no evidence that enforcement of the order was necessary to ensure the child's physical or emotional safety or welfare. We agree.

**A.      Standard of Review**

The award of attorney's fees as child support is a legal conclusion that we review de novo. *See In Re A.M.W.*, 313 S.W.3d 887, 893 (Tex. App.—Dallas 2010, no pet.). Fees may be awarded as child support only if the court finds that (1) the

respondent failed to make child support payments, or (2) the respondent failed to comply with the terms of an order providing for possession or access and enforcement of the order was necessary to ensure the child's physical or emotional health or welfare. TEX. FAM. CODE § 157.167(a)–(b). Otherwise, the fees awarded in a suit affecting the parent-child relationship may be collected by any means available for the enforcement of judgment on a debt. *Id.* § 106.002(b).

## B.    Analysis

The court erred in characterizing the fee award as a form of child support. Amy's motion for enforcement of possession or access complained that on six occasions Dustin failed to make A.L.G. available as required by the SAPCR order. She requested, among other relief, that Dustin be held in contempt for each of the six violations and that the court grant her additional periods of access to A.L.G. After a hearing, the court found that Dustin denied Amy her court-ordered period of access and possession on two occasions. There was no contempt finding. The court made no finding that enforcement of the SAPCR order's possession and access terms was necessary to ensure A.L.G.'s physical or emotional health or welfare, as was required for the fee award to be enforceable as child support. The only testimony presented at the de novo hearing was Amy's lawyer's testimony regarding his qualifications, hourly rate, and time spent on the case. The only evidence at the prior enforcement hearing was Amy's testimony that she hired her attorney to represent

13

her pursuing enforcement for $1,500. *See* TEX. FAM. CODE § 201.317(f) (At a de novo hearing the trial court may consider the record from the prior hearing.). There is no basis in fact or in law to characterize the fee award in this case as a form of child support.

Accordingly, we strike the language from the attorney's fees order that allows for the enforcement of the attorney fee's award by treating it as child support. *See* TEX. FAM. CODE § 157.167(b).

### Conclusion

We reverse the trial court's January 2, 2018 possession order with respect to the drug testing timing and marijuana level provisions. We modify the order to strike the "Clarification of Prior Order" section and to strike the phrase "the previous order is clarified as listed above" from the "Relief Granted" section.

We modify the trial court's January 3, 2018 attorney's fees order by striking the language that allows for enforcement under Section 157.167(b) of the Family Code.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.